FILED
2017 Dec-18  AM 11:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GRANGE MUTUAL CASUALTY COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **4:17-CV-01263-VEH** |
| **INDIAN SUMMER CARPET MILLS, INC.; THE WATER WORKS AND SEWER BOARD OF THE CITY OF GADSDEN; and THE WATER WORKS AND SEWER BOARD OF THE TOWN OF CENTRE;** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Grange Mutual Casualty Company ("Grange") files this Amended Complaint for Declaratory Judgment within the time frame directed by the Court in its order of November 17, 2017.  (Doc. 26.)

## PARTIES

### 1.

Grange is incorporated under the laws of Ohio with its principal place of business in Ohio.  Grange seeks a declaration of its coverage obligations, if any, owed under insurance policies issued to Indian Summer Carpet Mills, Inc. as the named insured.

2.

Defendant Indian Summer Carpet Mills, Inc. ("Indian Summer") is incorporated under the laws of Georgia with its principal place of business in Georgia. It may be served through its registered agent, James L. Orr, 601 Callahan Road, Dalton, Georgia 30721.

3.

Defendant The Water Works and Sewer Board of the City of Gadsden ("Gadsden Water") is an Alabama municipal corporation formed pursuant to Ala. Code § 11-50-230, with its principal place of business in Alabama. It may be served through its chief executive officer at 515 Albert Rains Boulevard, Gadsden, Alabama 35901-2562.

4.

Defendant The Water Works and Sewer Board of the City of Centre ("Centre") is an Alabama municipal corporation formed pursuant to Ala. Code § 11-50-230, with its principal place of business in Alabama. It may be served through its chief executive officer at 130 South River Street, Centre, Alabama 35960.

## JURISDICTION

5.

There is complete diversity of citizenship between Grange, who is a citizen of Ohio, and Defendants who are citizens of Georgia and Alabama for purposes of federal court jurisdiction.

6.

Grange seeks a declaration that it has no duty to defend its insured (Indian Summer) in two underlying lawsuits.  The defense costs that Grange will incur in the two underlying lawsuits, absent the requested declaratory relief, will exceed $75,000.   In addition, Grange seeks a declaration that it has no duty to indemnify Indian Summer for any settlement or judgment entered against Indian Summer in the two underlying lawsuits.  Given the nature of the claims asserted against Indian Summer in the two underlying lawsuits and the nature of the damages sought against Indian Summer in the two underlying lawsuits, the amount sought to be recovered from Indian Summer in each of the two underlying lawsuits exceeds $75,000.  In addition, the amount of defense costs that Grange will incur in the two underlying lawsuits combined with the amount sought to be recovered from Indian Summer in the two underlying lawsuits exceeds $75,000.   Accordingly, and for the reasons more fully set forth in Plaintiff's Response to the Court's November 17, 2017 Order filed contemporaneously herewith, the amount in controversy exceeds $75,000.

7.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8.

There is an actual case or controversy regarding Grange's coverage obligations, if any, for claims asserted in litigation pending in this judicial district as well.  28. U.S.C. § 2201.

9.

Venue is proper because Defendants Gadsden Water and Centre Water are located in Etowah County and Cherokee County, respectively, both of which are within the Northern District of Alabama, Middle Division.  28. U.S.C. § 1391(b).

**UNDERLYING LAWSUITS**

10.

Gadsden Water filed a civil action against Indian Summer and others in the Circuit Court of Etowah County, Alabama on September 22, 2016, where it was assigned case number 31-CV-2016-900676.00, a true and complete copy of which is attached as Exhibit A.  Gadsden Water's civil action has been removed to this Court where it has been assigned civil action number 4:16-cv-01755-KOB.

11.

Centre Water filed a civil action against Indian Summer and others in the Circuit Court of Cherokee County, Alabama on May 15, 2017, where it was assigned case number 13-CV-2017-900406.00, a true and complete copy of which is attached as Exhibit B.  Centre Water's civil action has been removed to this Court where it has been assigned civil action number 4:17-cv-01026-KOB

12.

In the Underlying Lawsuits, Defendants Gadsden Water and Centre Water allege that Indian Summer and its co-Defendants manufacture carpets or other textile products in the Dalton, Georgia area, or supply chemical products to them.  Gadsden Water and Centre Water allege that Indian Summer and its co-defendants discharge toxic chemicals in their industrial wastewater from their manufacturing facilities in or around Dalton and that these toxic chemicals resist water treatment at Dalton Utilities' wastewater treatment plant.   Gadsden Water and Centre Water allege this waste is then pumped to a 9,800-acre Land Application System ("LAS") that borders the Conasauga River.  Gadsden Water and Centre Water allege that this waste then seeps from the LAS into the Conasauga River. Defendant Gadsden Water alleges that the Conasauga River is one of five major tributaries for the Coosa River, which is its primary source for water.

13.

More specifically, Gadsden Water and Centre Water allege that Indian Summer and its co-Defendants discharge perfluorinated compounds ("PFC"), perfluorooctanic acid ("PFOA"), perfluorooctane sulfonate ("PFOS") and related chemicals.   They contend that Indian Summer and its co-Defendants utilize these chemicals in the stain-resistant carpeting manufacturing process.

14.

Gadsden Water and Centre Water assert that the Environment Protection Agency has identified industrial wastewater from manufacturing facilities from Indian Summer and its co-defendants as the source of PFOA and PFOS entering the Consauga River.

15.

Gadsden Water and Centre Water assert further that exposure to even low levels of PFOA, PFOS and related chemicals causes heightened risk of testicular cancer, kidney cancer, ulcerative colitis, thyroid disease, high cholesterol and pregnancy-related hypertension.

16.

Gadsden Water and Centre Water allege that they began regular testing for PFOA and PFOS in the water supply after May 2016 and have consistently found

PFOA and PROS levels that combine to meet or exceed a threshold of .07 ppb, which allegedly is the limit set by the EPA in May 2016.

17.

Gadsden Water and Centre Water allege that their water treatment plants cannot remove the toxic chemicals discharged by Indian Summer and its co-defendants.  As a consequence, Gadsden Water and Centre Water contend they have sustained substantial economic and consequential damages, including future expenses for installing and operating a filtration system capable of removing the toxic chemicals, and lost profits and sales due to local residents not wanting to purchase water from them.

18.

Gadsden Water and Centre Water assert claims against Indian Summer and its co-defendants that include negligence, nuisance, trespass, and seeks compensatory damages, punitive damages, injunctive relief and attorney's fees.

19.

Grange is defending Indian Summer in both actions under reservation of rights.

## **PRIMARY POLICY PROVISIONS**

### 20.

Grange issued policy number CPP 2618437-00 to Indian Summer as the named insured for the period December 21, 2008 to December 21, 2009 (hereinafter, "the 2008 Primary Policy"). A certified copy of the 2008 Primary Policy is attached hereto as Exhibit C.

### 21.

The 2008 Primary Policy contains the following exclusion:

**f.     Pollution**

(1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)     At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

(i)     "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(ii)     "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or

8

location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)   Any insured; or

(ii)   Any person or organization for whom you may be legally responsible; or

(d)   At or from any premises, site or location on which any insured or any contractor, or subcontractors, working directly or indirectly on any insured's behalf, are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.    However, this subparagraph does not apply to:

(i)   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the "bodily injury" or

9

"property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii)     "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)      At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants."

(2)      Any loss, cost or expense arising out of any:

(a)      Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)      Claim or "suit" by or on behalf of a governmental authority for damages because of testing for

10

monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants"

22.

The 2008 Primary Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.   Waste includes materials to be recycled, reconditioned or reclaimed."

23.

Grange issued policy number CPP 2618437-01 to Indian Summer as the named insured for the period December 21, 2009 to December 21, 2010 (hereinafter, "the 2009 Primary Policy").  A certified copy of the 2009 Primary Policy is attached hereto as Exhibit D.  The 2009 Primary Policy contains the same pollution exclusion and definition of "pollutants" as the 2008 Primary Policy.

24.

Grange issued policy number CPP 2618437-02 to Indian Summer as the named insured for the period December 21, 2010 to December 21, 2011 (hereinafter, "the 2010 Primary Policy").  A certified copy of the 2010 Primary Policy is attached hereto as Exhibit E.   The 2010 Primary Policy contains the same pollution exclusion and definition of "pollutants" as the 2009 Primary Policy and the 2008 Primary Policy.

11

25.

Grange issued policy number CPP 2618437-03 to Indian Summer as the named insured for the period December 21, 2011 to December 21, 2012 (hereinafter, "the 2011 Primary Policy").  A certified copy of the 2011 Primary Policy is attached hereto as Exhibit F.  The 2011 Primary Policy contains the same pollution exclusion and definition of "pollutants" as the 2010 Primary Policy, the 2009 Primary Policy and the 2008 Primary Policy.

26.

The foregoing primary policies were delivered to Indian Summer in Georgia.

### UMBRELLA POLICY PROVISIONS

27.

Grange issued an umbrella policy, policy number CUP 2618438-00 to Indian Summer as the named insured for the period December 21, 2008 to December 21, 2009 (hereinafter, "the 2008 Umbrella Policy").  A certified copy of the 2008 Umbrella Policy is attached hereto as Exhibit G.

28.

The 2008 Umbrella Policy includes an Amended Pollution Exclusion endorsement.  The Amended Pollution Exclusion includes the following:

This endorsement modifies insurance provided under the following:
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
Exclusion **i. Pollution** of Paragraph **2. Exclusions** of SECTION I –

12

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY is deleted and replaced by the following:

**f.     Pollution**

(1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

*        *        *

(b)     At or from any premises, site or location that is or was at any time, owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

(i)     "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your applicable "underlying insurance" as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(ii)     "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(c)     At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(d)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

13

(i)     Any insured; or

(ii)    Any person or organization for whom any insured may be legally responsible; or

(e)    At or from any premises, site or location on which any insured or any contractor, or subcontractors, working directly or indirectly on any insured's behalf, are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.  However, this subparagraph (e) does not apply to:

(i)     "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment", any "auto" covered by applicable "underlying insurance" or the parts of either, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.

This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii)    "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from

14

materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(2)    "Pollution cost or expense".

However, this paragraph (2) does not apply to liability for damages because of "property damage" that the insured would have in the absence of any request, demand, order or statutory or regulatory requirements, claims or suit as described in parts (a) or (b) of the definition of "pollution costs or expense."

29.

The 2008 Umbrella Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

30.

The 2008 Umbrella Policy defines "pollution cost or expense" as "any loss, cost or expense arising out of any:

a.    Request, demand, order or statutory or regulatory requirement that nay insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

b.     Claim or "suit" by or on behalf of a governmental authority for damages because of testing for monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants."

31.

Grange issued an umbrella policy, policy number CUP 2618438-01 to Indian Summer as the named insured for the period December 21, 2009 to December 21, 2010 (hereinafter, "the 2009 Umbrella Policy").   A certified copy of the 2009 Umbrella Policy is attached hereto as Exhibit H.  The 2009 Umbrella Policy contains the same Amended Pollution Exclusion endorsement and definitions of "pollutants" and "pollution cost or expense" as the 2008 Umbrella Policy.

32.

Grange issued an umbrella policy, policy number CUP 2618438-02 to Indian Summer as the named insured for the period December 21, 2010 to December 21, 2011 (hereinafter, "the 2010 Umbrella Policy").   A certified copy of the 2010 Umbrella Policy is attached hereto as Exhibit I.  The 2010 Umbrella Policy contains the same Amended Pollution Exclusion endorsement and definitions of "pollutants" and "pollution cost or expense" as the 2008 Umbrella Policy and the 2009 Umbrella Policy.

33.

Grange issued an umbrella policy, policy number CUP 2618438-03 to Indian Summer as the named insured for the period December 21, 2011 to December 21,

2012 (hereinafter, "the 2011 Umbrella Policy").   A certified copy of the 2011 Umbrella Policy is attached hereto as Exhibit J.  The 2011 Umbrella Policy contains the same Amended Pollution Exclusion endorsement and definitions of "pollutants" and "pollution cost or expense" as the 2008 Umbrella Policy, 2009 Umbrella Policy and 2010 Umbrella Policy.

34.

The foregoing umbrella policies were delivered to Indian Summer in Georgia.

**DECLARATORY JUDGMENT**

35.

Gadsden Water and Centre Water allege that Indian Summer discharges toxic chemicals, including PFC, PFOA, PFOS and related chemicals, in its industrial wastewater from its manufacturing facilities in or around Dalton and that these toxic chemicals resist water treatment at Dalton Utilities' wastewater treatment plant.

36.

Gadsden Water and Centre Water allege that, due to the conduct of Indian Summer, unsafe levels of PFOA, PFOS and related chemicals are present in their sources for water, thereby causing damages.

37.

The allegations by Gadsden Water and Centre Water allege against Indian Summer in the underlying lawsuits fall within the pollution exclusion in Grange's

2008 Primary Policy, 2009 Primary Policy, 2010 Primary Policy and 2011 Primary Policy issued to Indian Summer.

38.

The allegations by Gadsden Water and Centre Water allege against Indian Summer in the underlying lawsuits fall within the Amended Pollution Exclusion endorsement in Grange's 2008 Umbrella Policy, 2009 Umbrella Policy, 2010 Umbrella Policy and 2011 Umbrella Policy issued to Indian Summer.

39.

Based on the terms, conditions and exclusions in the Grange policies (whether expressly mentioned in this Amended Complaint or not), as well as under relevant legal principles and public policy concerns, Grange seeks the following:

(a)    A declaration that Grange has no legal obligation to defend or indemnify Indian Summer for the claims asserted by the allegations by Gadsden Water and Centre Water in the underlying lawsuits;

(b)    A jury to resolve all issues so triable; and

(c)    Other and further relief as is just and proper.

18

FREEMAN MATHIS & GARY, LLP

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
William H. Buechner, Jr.
Georgia Bar No. 086392
bbuechner@fmglaw.com

Attorneys for Plaintiff

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record are:

Stephen F. Casey
Emily Sides Bonds
J. David Moore
JONES WALKER LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203

In addition, I hereby certify that I have date served the within and foregoing **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** by depositing a true and correct copy thereof by via U.S. Mail and via Certified Mail, Return Receipt Request, and properly addressed to additional parties who are not CM/ECF participants as follows:

Chad Hare, General Manager
The Water Works and Sewer Board of the City of Gadsden
515 Albert Rains Boulevard
Gadsden, AL 35901-2562

Chief Executive Officer or General Manager
The Water Works and Sewer Board of the Town of Centre
130 South River Street
Centre, AL 35960

This 18th day of December, 2017.

*/s/ Philip W. Savrin*
Philip W. Savrin
*Admitted Pro Hac Vice*
psavrin@fmglaw.com

Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960